## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **ALLISTAIR ST. AUBYN CLARKE,** | : | **CIVIL ACTION NO.** |
| **Movant,** | : | **1:10-CV-700-RLV-AJB** |
| | : | |
| **v.** | : | **CRIMINAL ACTION NO.** |
| | : | **1:05-CR-254-RLV-AJB-6** |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent.** | : | **MOTION TO VACATE** |
| | : | **28 U.S.C. § 2255** |

### ORDER FOR SERVICE OF
### <u>REPORT AND RECOMMENDATION</u>

Attached is the Report and Recommendation of the United States Magistrate

Judge made in accordance with 28 U.S.C. § 636(b)(1), FED. R. CIV. P. 72(b) and

N.D. Ga. R. 72.1(C).  Let the same be filed and a copy, together with a copy of this

Order, be served upon counsel for the parties or, if a party is not represented, upon that

party directly.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any,

to the Report and Recommendation within **fourteen (14) days** of service of this Order.

Should objections be filed, they shall specify with particularity the alleged error(s)

made (including reference by page number to any transcripts if applicable) and shall be

served upon the opposing party.  The party filing objections will be responsible for

obtaining and filing the transcript of any evidentiary hearing for review by the District

Court.  If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review.  *United States v. Slay*, 714 F.2d 1093 (11th Cir. 1983).

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED and DIRECTED**, this 9th  day of   August   , 2011.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **ALLISTAIR ST. AUBYN CLARKE,** | : | **CIVIL ACTION NO.** |
| **Movant,** | : | **1:10-CV-700-RLV-AJB** |
| | : | |
| **v.** | : | **CRIMINAL ACTION NO.** |
| | : | **1:05-CR-254-RLV-AJB-6** |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent.** | : | **MOTION TO VACATE** |
| | : | **28 U.S.C. § 2255** |

**UNITED STATES MAGISTRATE JUDGE'S**
**FINAL REPORT AND RECOMMENDATION**

Movant's motion to vacate sentence under 28 U.S.C. § 2255 is pending before

the Court. [Doc. 252.][1] Movant, *pro se*, challenges his convictions and sentence in this

Court for conspiracy to possess with the intent to distribute at least five kilograms of

cocaine and possession with the intent to distribute at least five kilograms of cocaine.

Respondent opposes the motion, [Doc. 261], and Movant has filed a reply to

Respondent's opposition, [Doc. 265].  On June 22, 2011, the undersigned held an

evidentiary hearing regarding two of the grounds for relief in Movant's motion.

[Doc. 294.]  For the reasons discussed below, the undersigned **RECOMMENDS** that

the Court deny the motion and **DENY** Movant a certificate of appealability.

---

[1]        Unless otherwise indicated, all citations to the record in this Report and
Recommendation refer to criminal action number 1:05-CR-254-RLV-AJB.

## I.    Background

On July 12, 2005, a federal grand jury indicted Movant and five others for cocaine possession and conspiracy offenses.  [Doc. 1.]  Three of the six defendants – Movant, Ivan DeJesus Chapa, and Clive Anthony Francis – were arrested, while the other three defendants remain fugitives.[2]

Chapa pled guilty, pursuant to a negotiated plea agreement, on May 9, 2006, [Doc. 86], and Francis pled guilty, without a plea agreement, on June 5, 2007, [Doc. 139].  The Court sentenced Chapa and Francis on October 14, 2008.  [Docs. 212-15.]

Movant's initial appearance before the Court was June 22, 2006.  [Doc. 91.]  On July 28, 2006, Movant filed a motion to suppress evidence.  [Doc. 102.]  After conducting hearings on the motion, as well as on Francis' related motion, the undersigned issued a Report and Recommendation ("R&R") regarding all the motions to suppress on February 16, 2007.  [Doc. 130.]  Movant and Respondent filed objections to the R&R on March 12, 2007.  [Docs. 135-36.]  On September 26, 2007,

---

[2]    The fugitives are Jaime Gutierrez Garcia, Felicitos Lozano Gonzalez, and Ayala Jorge Luis Sotelo.  Respondent states in its response to Movant's § 2255 motion that only Garcia and Gonzalez are fugitives, [Doc. 261 at 1 n.1], but the docket does not indicate that any of those three defendants were ever found.

2

the Court set the trial date for Movant – the only defendant who had not pled guilty and was not a fugitive – as October 29, 2007.  [Doc. 140.]  On October 3, 2007, former Judge Camp, who presided over the case through Movant's sentencing, adopted the R&R.  [Doc. 141.]

Movant's trial did not begin until April 7, 2008, because the Court granted Respondent's motions, filed on October 11, 2007, and February 7, 2008, to continue the trial date.  [Docs. 147, 153.]  The Court granted the first extension because of time needed to produce trial witnesses who were federal prisoners in other districts, Respondent's counsel's scheduled surgery, and Movant's counsel's specially set murder trial and appellate oral argument.  [Doc. 147.]  The Court granted the second extension because Respondent's counsel had an ongoing trial in another case, plea negotiations between Movant and Respondent failed a few days before the trial date, and there were difficulties in producing trial witnesses from other states.  [Docs. 152-53.]  In both cases, the Court found that the interests of justice outweighed Movant's and the public's interest in a speedy trial and, thus, that the time from October 11, 2007, to April 7, 2008, was excluded under the Speedy Trial Act.  [Docs. 147, 153.]

At trial, the evidence showed that Movant worked as a mechanic at a trucking company's warehouse owned by Francis and that the warehouse was used as a hub for

3

cocaine and drug proceeds receipt and distribution.  Movant conspired with others in

the drug trafficking, although he consistently has maintained that he was involved with

only marijuana, not cocaine.   At trial, Respondent presented testimony from an

undercover agent with the Drug Enforcement Agency ("DEA") and telephone and

video recordings of conversations and meetings Movant had with the agent in Arizona

where Movant discussed purchasing marijuana and cocaine.  [Doc. 220 at 264-88 &

Exs. 22, 22A.]  Movant told the DEA agent on multiple occasions that Movant and his

partners had a warehouse in Atlanta where the drugs could be delivered, along with

equipment for offloading the drugs.  [Doc. 220 at 253-54, 284, 288, 298.]

Two of Movant's co-conspirators, Chapa and Jesus Soto, also testified at trial.

[Doc. 221 at 460-549.]  Chapa did not mention Movant in his testimony.  [*Id.* at 460-

524.]  Soto testified that he saw Movant at the warehouse in Atlanta when he was there

to unload drugs, that Movant was the mechanic at the warehouse, and that Movant

helped Soto jump start his truck there on one occasion.  [*Id.* at 538.]

The jury convicted Movant of both counts.  [Doc. 185.]  The Court sentenced

him on July 1, 2008, to 130 months' imprisonment, among other things.  [Doc. 196,

226.]   Movant objected generally to all the facts in the presentence report and

specifically objected to the recommendation that he be denied a sentence reduction for

4

his role in the offense. [Doc. 226 at 2.] The Court sustained Movant's objection regarding his role in the offense and found that he had only a minor role, thus reducing his imprisonment range under the U.S. Sentencing Guidelines from 235-293 months to 121-151 months. [*Id.* at 16-17.] The statutory minimum sentence was 120 months' imprisonment. [*Id.* at 17.]

Movant appealed, arguing that there was insufficient evidence to support his convictions and that Respondent failed to prove that he was part of the cocaine conspiracy charged in the indictment. *United States v. Clarke*, 331 Fed. Appx. 670, 671 (11th Cir. June 4, 2009). The Eleventh Circuit found that "[t]he evidence was overwhelming" that Movant participated in the conspiracy and that there was sufficient evidence to support Movant's conviction for possession of cocaine with intent to distribute it. *Id.* at 671-72. The court affirmed Movant's convictions. *Id.* at 672.

Attorneys Derek M. Wright and Bruce S. Harvey (Movant's "trial counsel") represented Movant from pre-trial proceedings through sentencing. Attorney Mary Erickson represented Movant on appeal.

In his § 2255 motion, Movant contends that his trial counsel rendered constitutionally ineffective assistance. [Doc. 252.] Specifically, Movant contends that his trial counsel failed to:

5

1.    move to dismiss the indictment prior to trial for violation of the Speedy Trial Act;

2.    advise Movant, in connection with a proposed plea agreement prior to trial, of the opportunity to obtain relief under the "safety valve" through cooperation with Respondent;

3.    advise Movant, after trial and before sentencing, of the opportunity to obtain relief under the "safety valve" through cooperation with Respondent;

4.    conduct a reasonable investigation of the facts of the case before trial by interviewing Respondent's trial witnesses; and

5.    challenge the quantity of drugs for which Movant was held responsible at sentencing.

[*Id.* at 4-11.] On June 22, 2011, the undersigned held an evidentiary hearing regarding grounds two and three. [Doc. 294.]

## II.    The 28 U.S.C. § 2255 Standard

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. A sentence is subject to collateral attack when there is a fundamental defect that results in a complete miscarriage of justice.

6

*United States v. Addonizio*, 442 U.S. 178, 185 (1979).  "To obtain collateral relief, a [movant] must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).

To establish ineffective assistance of counsel, a § 2255 movant must show that his counsel's performance was deficient such that it was below objectively reasonable standards, and that the deficient performance prejudiced the movant.  *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984).  As for the first prong of the test, a court should be "highly deferential" in scrutinizing counsel's performance, *id.* at 689, and "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment," *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). To establish deficient performance, a movant must establish that no objectively competent lawyer would have taken the action that his lawyer took.  *Id.* at 1315.

Under the second prong of the test, a court determines whether counsel's challenged acts or omissions prejudiced the movant, i.e., whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  A court need not

7

address both prongs of *Strickland*'s test if the movant "makes an insufficient showing on one." *Id.* at 697.

### III.   Analysis

The undersigned finds that Movant has not established both prongs of *Strickland*'s test for ineffective assistance of counsel as to any of his five grounds for relief.  The undersigned discusses each ground in turn.

### A.   *Ground One*

The Speedy Trial Act requires trial to commence within seventy days of the date an indictment is filed or the date the defendant makes his first appearance before a judge, whichever is later.  18 U.S.C. § 3161(c)(1).  Certain periods of delay in commencing the trial are excluded from the seventy-day calculation, however.  *Id.* § 3161(h).  Excluded time includes delay resulting from the absence of a defendant whose whereabouts are unknown when his whereabouts cannot be determined by due diligence or when he is attempting to avoid apprehension or prosecution.  *Id.* § 3161(h)(3).  "A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted" is also excluded.  *Id.* § 3161(h)(6).

Movant argues that his trial counsel should have moved to dismiss the indictment

8

for violation of the Speedy Trial Act because of the delay in trying him after the undersigned's R&R on his motion to suppress evidence became ripe for review. He contends that the seventy-day period to try him began on June 22, 2006, the date of his initial appearance before a judge in this case, as that occurred after he was indicted. He contends that the clock stopped when he filed his motion to suppress on July 28, 2006 and did not resume until thirty days after he and Respondent filed their objections to the R&R regarding the motion, which they both filed on March 12, 2007. *See United States v. Davenport*, 935 F.2d 1223, 1228 (11th Cir. 1991) (holding that once the parties have filed all materials related to a pre-trial motion, the court takes the motion under advisement for purposes of 18 U.S.C. § 3161(h)(1)(D) & (H) "and no more than thirty additional days may be excluded from the speedy trial clock"). The seventy-day period expired, according to Movant, before former Judge Camp adopted the R&R on October 3, 2007, because no other motions were pending as of March 12, 2007, and nothing happened in the case between March 12 and October 3, except for co-defendant Francis pleading guilty on June 5 and the Court setting a trial date on September 26. [*See* Docs. 135-41.] For those reasons, Movant argues that his trial counsel should have realized that the Speedy Trial Act had been violated.

Movant's trial counsel were not ineffective for not asserting a Speedy Trial Act

9

violation because there was no reasonable basis for them to believe there was a violation. It was reasonable for a minimally competent lawyer to believe that the delay about which Movant complains was excluded under the Speedy Trial Act because of Movant's fugitive and non-fugitive co-defendants.

Respondent points out that Chapa and Francis, Movant's non-fugitive co-defendants who were never severed from this case, were not sentenced until October 14, 2008. Respondent suggests that the delay in those co-defendants' proceedings was reasonable and, thus, attributable to Movant under 18 U.S.C. § 3161(h)(6). Although Chapa and Francis both had pled guilty by June 5, 2007, four months before the R&R regarding Movant's motion to suppress was adopted, Respondent contends that time continued to be excluded until they were sentenced, relying on *United States v. Childers*, 290 Fed. Appx. 253 (11th Cir. Aug. 5, 2008). The undersigned finds that *Childers* does not support such a proposition. Nevertheless, based on the law on this issue at the time of Movant's trial, it cannot be said that Movant's trial counsel's failure to assert a Speedy Trial Act violation was objectively unreasonable.

In *Childers*, two defendants were charged in one indictment with drug offenses. *Childers*, 290 Fed. Appx. at 254. Childers was tried and his co-defendant pled guilty.

10

*Id.*  Childers asserted that he was not tried within seventy days, and the issue was whether the time between his co-defendant's Rule 11 hearing and sentencing was excluded from Childers' seventy-day period.  *Id.* at 254-55; Order at 4-5, *United States v. Childers*, No. CR106-74 (S.D. Ga. Sept. 24, 2007).  The district court did not accept the co-defendant's guilty plea at the Rule 11 hearing, but instead considered the co-defendant's plea agreement for several months before ultimately accepting it and sentencing him, which occurred after Childers' trial.  Order at 4, *Childers*, No. CR106-74.  At the time of Childers' trial, the district court found that the four-month period between the Rule 11 hearing for Childers' co-defendant and Childers' trial was a reasonable delay excluded from Childers' seventy-day period under 18 U.S.C. § 3161(h)(6) "because the Court has not yet accepted – and at this point may still refuse to accept – [the co-defendant's] plea of guilty."  *Id.*  The Eleventh Circuit agreed, further noting that no motion for severance had been granted in the case.  *Childers*, 290 Fed. Appx. at 254-55.

Here, unlike *Childers*, the Court accepted Chapa's and Francis' guilty pleas at their Rule 11 hearings and adjudged them guilty at that time.  [Docs. 88 at 15, 285 at 15-16.]  The Court did not delay the acceptance of their pleas or adjudication of guilt pending review of plea agreements; indeed, Francis did not have a plea agreement.

11

[Docs. 139-1, 285 at 2.]  Thus, the basis for the court's holding in *Childers* is not present here.  The undersigned does not interpret *Childers* to stand for the broader proposition that all time between a defendant's Rule 11 hearing and his sentencing is excluded from the calculation of his co-defendant's speedy trial clock as a "reasonable period of delay" resulting from the defendants' joinder in the case.  *See* 18 U.S.C. § 3161(h)(6); *Childers*, 290 Fed. Appx. at 254-55 (finding no Speedy Trial Act violation because "up until the date on which the court adjudged [the co-defendant] guilty at sentencing, [the co-defendant] was free to change his mind and proceed to trial, and the district court was free to reject the plea").

The issue here is not whether the Speedy Trial Act was violated, however, but whether Movant's trial counsel's failure to assert such a violation was something no reasonably competent counsel would have failed to do.  *See Chandler*, 218 F.3d at 1315-16. "If some reasonable lawyer might have not pursued a certain defense," e.g., a Speedy Trial Act violation, then Movant's trial counsel did not render constitutionally ineffective assistance by not doing so.  *See id.* at 1316 n.17.  The Eleventh Circuit decided *Childers* after Movant was tried and sentenced, and the undersigned has found no case prior to *Childers* (and the parties have cited none) addressing whether all the time between a defendant's guilty plea and sentencing is excludable as to his co-

12

defendant under § 3161(h)(6) simply because they are co-defendants and there has been no severance.  Thus, the state of the law at the time of Movant's trial does not support a finding that no reasonably competent lawyer would have failed to assert that Movant's speedy trial clock began running after the last of his non-fugitive co-defendants pled guilty in June 2007.  *See White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992) ("We ask only whether *some* reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." (emphasis added)).

In any event, the fugitive status and absence of three of Movant's co-defendants (Jaime Gutierrez Garcia, Felicitos Lozano Gonzalez, and Ayala Jorge Luis Sotelo) further precludes a finding that no reasonably competent counsel would have failed to assert a Speedy Trial Act violation in this case.  A reasonable period of delay resulting from the absence of a defendant whose whereabouts cannot be determined by due diligence is excluded from his co-defendants's speedy trial clock when no motion for severance has been granted.  18 U.S.C. §§ 3161(h)(3), (h)(6); *see United States v. Murray*, 154 Fed. Appx. 740, 746 (11th Cir. Sept. 27, 2005) ("[I]n a case involving multiple defendants, the speedy trial period begins to run when the last codefendant is indicted or first appears before a judge or magistrate judge."); *Davenport*, 935 F.2d at 1229-30 ("Because appellant was properly joined with the unavailable codefendants

13

during the relevant time period and no motion to sever had been granted, the delay occasioned by those codefendants under [§] 3161(h)(3)(A) is charged to appellant under § 3161(h)([6]).”). Movant must show that no reasonably competent lawyer could have believed those provisions of the Speedy Trial Act applied in this case. He has not done so.

Finally, it was not objectively unreasonable for Movant’s trial counsel not to assert a Speedy Trial Act violation based on the period of time between the adoption of the R&R on October 3, 2007, and the start of Movant’s trial on April 7, 2008. During that time, the Court granted Respondents’ motions to continue the trial date and found that the time was excluded under 18 U.S.C. § 3161(h)(7) because the ends of justice served by the delay outweighed Movant’s and the public’s interest in a speedy trial. [Docs. 147, 152-53.] The Court considered the specific circumstances necessitating the delay, including both parties’ counsel’s conflicts and difficulty in procuring trial witnesses, and found that those circumstances satisfied § 3161(h)(7). [*Id.*]

In short, Movant has not satisfied his “heavy” burden of overcoming the “strong presumption” that his trial counsel’s failure to move to dismiss the indictment based on a violation of the Speedy Trial Act was objectively reasonable. *See Chandler*, 218 F.3d

14

at 1314.  Nor has he established that he was prejudiced by his trial counsel's allegedly deficient performance because he has not shown that it is reasonably probable that the Court would have found a Speedy Trial Act violation had his trial counsel raised the issue.  He is not entitled to relief on ground one of his motion.

   B.     *Grounds Two and Three*

   In ground two of his motion, Movant contends that while he was considering a proposed plea agreement, his trial counsel failed to inform him that he would be eligible for relief under 18 U.S.C. § 3553(f) (the "safety valve") if he pled guilty and disclosed information to Respondent, and instead told him that he would be subject to the statutory minium sentence even if he pled guilty.  Movant contends he would have pled guilty if his trial counsel had properly advised him about the safety valve and the possibility of a sentence below the statutory minimum.  In ground three, Movant contends that his trial counsel failed to tell him after trial that he could obtain relief under the safety valve if he cooperated with Respondent before sentencing and wrongly told him that he was ineligible for such relief because he had gone to trial.

   The safety valve provides a two-level reduction under the U.S. Sentencing Guidelines and allows a district court to impose a sentence below a statutory minimum

15

for drug offenses if five requirements are met.  18 U.S.C. § 3553(f).[3]  In Movant's case,

it is undisputed that the first four requirements were met.  The fifth requirement is that

"not later than the time of the sentencing hearing, the defendant has truthfully provided

_____

[3]      The five criteria are:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a); *see also United States v. Milkintas*, 470 F.3d 1339, 1344-45 (11th Cir. 2006).

16

to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." *Id.* § 3553(f)(5).  "This final factor is a 'tell-all' provision . . . .  [T]o obtain safety-valve relief, [the defendant] would have had to tell the government everything she knew about the drug conspiracy, including about other people involved in the drug conspiracy."  *Patton v. United States*, 259 Fed. Appx. 194, 196 (11th Cir. Dec. 12, 2007) (citation and quotations omitted).  In other words, to satisfy this requirement, a defendant must come forward and truthfully supply all information he has relating to his offenses; the government is not required to solicit information from the defendant.  *United States v. Milkintas*, 470 F.3d 1339, 1345-46 (11th Cir. 2006).  A drug defendant's obligation to provide full disclosure includes any "information relating to the involvement of others and to the chain of the narcotics distribution." *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997); *see also United States v. Pope*, No. 10–14206–FF, 2011 WL 1500602, *1 (11th Cir. Apr. 21, 2011).

At the evidentiary hearing, Movant testified similarly to his allegations in his § 2255 motion, except he testified that both of his trial counsel told him about the safety valve before trial, but did not fully explain it to him.  [Doc. 294 at 7-9, 14.]  In his

17

§ 2255 filings, including his affidavit dated April 22, 2010, Movant states that his trial

counsel did not even discuss the safety valve with him before trial.  [Docs. 252 at 6-7,

265 at 5-7, 18 (averring that "[h]ad [I] known of the existence of the so-called 'safety

[v]alve,' [I] would have tendered a plea of guilty to the charge and proffered . . . but

because [I] did not know about the 'Safety Valve' provision, [I] was deprived of the

information necessary to make an intelligent decision").]  Movant's trial counsel both

testified at the hearing that they explained the safety valve to Movant before and after

trial and that Movant adamantly rejected any cooperation or debriefing with

Respondent because he always maintained that he was not involved in the drug

conspiracy.  [Doc. 294 at 27-33, 38-44, 46-47.]  Movant's trial counsel further testified

that they never told Movant that he could not be sentenced below the statutory

minimum or that he was ineligible for the safety valve because he went to trial.

[*Id.* at 32, 44.]

The undersigned does not find Movant's testimony at the hearing credible.  In

addition to the inconsistency between Movant's pre-hearing affidavit and his testimony

at the hearing, Movant changed his story during the hearing.  He testified at the

beginning of the hearing, before his trial counsel testified, that he had denied any

involvement in the drug conspiracy charged in the indictment before trial and through

18

sentencing and, thus, had no reason to talk with Respondent. [*Id.* at 14, 18.] After his trial counsel testified, Movant asked to testify again. [*Id.* at 52.] He then testified that he would have talked with Respondent before trial and accepted responsibility for his actions in Arizona and North Carolina regarding drugs, which contradicted his earlier testimony and the position he maintained throughout his trial, sentencing, and on appeal. [*Id.* at 53-55.]

The undersigned finds the testimony of Movant's trial counsel was credible and that trial counsel did, in fact, explain the safety valve to Movant before and after trial. Both trial counsel credibly testified about their numerous discussions with Movant about the case, including the evidence, the potential sentence, and the benefits of both cooperating with Respondent and engaging in a safety valve debriefing. They also testified that Movant consistently rejected the idea of any discussions or debriefing with Respondent before or after trial because he consistently maintained his innocence. Lead trial counsel's contemporaneous notes of the meeting with Movant support counsel's testimony. Both trial counsel's testimony in that regard is consistent with the record in this case. In short, the undersigned finds as a matter of fact that Movant's trial counsel properly advised him regarding his eligibility for the safety valve both before and after trial. Movant therefore has not shown that his trial counsel's

19

performance was deficient.

Even if Movant had satisfied *Strickland*'s first prong as to the safety valve issue, he has not shown that he was prejudiced. Despite his conflicting testimony and changing stories, Movant has never identified what he would have told Respondent regarding the crimes at issue in this case had there been a safety valve debriefing. Movant testified that he told his trial counsel "that I would tell the government what I was involved in which was marijuana. I did not express to [trial counsel] that I was going to admit to any transaction in cocaine[,] but I expressed to him that I would come to the government and tell them what I know about dealing in marijuana." [Doc. 294 at 54.] The crimes charged in this case, as to Movant and all his co-defendants, involved only cocaine, not marijuana. [Doc. 1.] Thus, even after changing his story regarding his willingness to cooperate, Movant has "presented no facts detailing his involvement in the [cocaine] conspiracy." *See Deltoro-Aguilera v. United States*, 625 F.3d 434, 438 (8th Cir. 2010) (rejecting § 2255 movant's claim that his counsel failed to advise him of his eligibility for the safety valve because "he did no more than state the conclusion that he would have provided the government with truthful information"). Movant had the burden of coming forward with all information in his possession that was relevant to the criminal enterprise with which he was involved, and

20

he did not fulfill his burden.  *Milkintas*, 470 F.3d at 1346.  His belated and wholly conclusory assertions that he would have cooperated do not support a finding that he was prejudiced by not having a safety valve debriefing.[4]  Movant is not entitled to relief on grounds two or three of his motion.

C.     *Ground Four*

Movant faults his trial counsel for not interviewing co-conspirators Soto and Chapa, both of whom testified for Respondent, before trial.  Movant contends that his trial counsel would have learned the facts those co-conspirators could testify about had they interviewed them, specifically that Movant's involvement in the alleged offenses was very limited.  More specifically, Movant contends that his trial counsel would have learned that the only evidence from either Soto or Chapa regarding Movant's involvement was that he was a mechanic at the trucking company's warehouse in Atlanta, that he was there on only one occasion when Soto was there delivering drugs,

----

[4]     Moreover, Movant also has not shown that, even if he had satisfied all the requirements for the safety valve, he would have received a lesser sentence.  The Court considered the evidence and the sentencing factors in 18 U.S.C. § 3553(a) in finding that the sentence imposed "provides a reasonable sentence for the purpose of both deterrence and punishment in [Movant's] case."  [Doc. 226 at 17.]  *See United States v. Quirante*, 486 F.3d 1273, 1276 (11th Cir. 2007) ("[A] court compelled to disregard a mandatory minimum sentence in favor of the guidelines range [because the safety valve applies] . . . may vary upward to and even past the mandatory minimum point after considering the § 3553(a) factors – so long as the final sentence is reasonable.").

21

and that he merely jump-started Soto's truck on that occasion. Movant contends that the allegation in his presentence report that Soto told agents Movant was a "look out" was not supported by any trial testimony and that his trial counsel should have investigated that before trial.

Even assuming it was objectively unreasonable for Movant's trial counsel not to interview Chapa and Soto before trial, Movant cannot show that he was prejudiced because Chapa's and Soto's trial testimony was consistent with the facts that Movant contends a pre-trial interview of those witnesses would have revealed. Chapa did not mention Movant at all during his testimony, [Doc. 221 at 460-524], and Soto only briefly mentioned him, [*id.* at 538]. Soto testified that he saw Movant at the warehouse in Atlanta when he was there to unload drugs, that Movant was the mechanic at the warehouse, and that Movant helped Soto jump start his truck there on one occasion – precisely what Movant contends his trial counsel would have learned had they interviewed Soto before trial. [*Id.* at 538; Doc. 252 at 9-10.] Neither Chapa nor Soto testified that Movant was involved in any drug trafficking or drug operations, and Soto did not testify that Movant was a "look out" or anything similar. [Doc. 221 at 460-524.] Thus, Movant has not shown that he was prejudiced by his trial counsel's alleged inadequate pre-trial investigation of Chapa's or Soto's testimony.

22

To the extent Movant contends he was prejudiced at sentencing because his trial counsel failed to interview Soto before trial and, thus, more fully develop his testimony at trial, he again fails to show any prejudice. Movant's trial counsel did not cross-examine Soto at trial. Movant apparently believes that, had they done so, they would have elicited that, contrary to the later-prepared presentence report, Soto did not tell agents that Movant was a "look out" at the warehouse. They then could have used that testimony to dispute the presentence report and obtain a lower sentence.

Movant's trial counsel successfully argued at sentencing that Movant had only a minor role and prevailed on their objection to the presentence report on that issue. In rejecting the presentence report's findings regarding Movant's role, the Court reduced the range of imprisonment from 235-293 months to 121-151 months and sentenced Movant to the lower end of the reduced range. Movant has not established ineffective assistance of counsel regarding Chapa's and Soto's testimony and is not entitled to relief on ground four of his motion.

### D.    Ground Five

In his final ground for relief, Movant contends that his trial counsel improperly failed to challenge at sentencing the drug quantity attributable to Movant and to request the Court to make a specific finding as to the drug quantity reasonably foreseeable to

23

him.  Movant was convicted of drug trafficking involving at least five kilograms of cocaine.  Movant concedes that the Court could have attributed twenty-five kilograms of cocaine to him because that was the amount present at a meeting Movant had with the undercover DEA agent in Arizona where they discussed purchasing cocaine. [Doc. 265 at 16.]  Five or more kilograms of cocaine subjected Movant to a mandatory minimum sentence of 120 months' imprisonment.  *See* 21 U.S.C. § 841(b)(1)(A).

The presentence report's calculation of Movant's imprisonment range was based on trial evidence regarding a 300-kilogram shipment of cocaine to Atlanta as part of the conspiracy.  Movant argues that he should not be held responsible for that amount of cocaine.  He contends that there is a reasonable probability that the Court would have sentenced him to the mandatory minimum of 120, rather than 130, months' imprisonment if his trial counsel had gotten the Court to specifically find the drug quantity reasonable foreseeable to him.

Like the speedy trial issue in ground one, the issue here is not whether the Court erred by not specifically finding the drug quantity reasonably foreseeable to Movant, but whether no reasonably competent lawyer would have failed to ask the Court to make such a finding and, if so, whether Movant was prejudiced.  Movant has not established either prong of *Strickland*'s test for ineffective assistance as to this issue.

24

It was objectively reasonable for Movant's trial counsel not to insist that the Court specifically find the drug quantity reasonably foreseeable to Movant given the evidence presented at trial and the Court's rulings in the case. Before and during trial, the Court rejected Movant's argument that the evidence regarding events in Arizona and North Carolina should be excluded and held that the Arizona and North Carolina events were intrinsic to the primary drug conspiracy involving the trucking company in Atlanta. The evidence showed Movant's involvement with the conspiracy in all three states, even though he had only a minor role, and supported a finding that he knew that the conspirators were trafficking hundreds of kilograms of cocaine. Indeed, in denying Movant's motion for a judgment of acquittal at trial, the Court noted that the evidence showed the conspirators "had a lot of [cocaine] in their hands on a lot of different occasions." [Doc. 221 at 620.] Given the overwhelming evidence against him and his own admission that the twenty-five kilograms of cocaine shown on the videotaped meeting in Arizona was sufficient to trigger the 120-month mandatory minimum sentence, it was reasonable for Movant's trial counsel to conclude that arguing for a specific factual finding on drug quantity would not have resulted in a lower sentence than Movant received. *See Gutierrez-Flores v. United States*, No. 97 CIV. 5677(CSH), 1999 WL 147735, *7 (S.D.N.Y. Mar. 18, 1999) (rejecting

AO 72A
(Rev.8/82)

§ 2255 movant's ineffective assistance claim regarding drug quantity because "[i]n the face of th[e] evidence, it is simply not a tenable argument that [movant] was unaware of the magnitude of the drugs involved in the transaction").

For the same reasons, Movant has not established that there is a reasonable probability that the Court would have sentenced him to less than 130 months' imprisonment if his trial counsel had argued for a specific finding regarding the drug quantity attributable to him.  Movant contends that if his trial counsel had so argued and had challenged the drug quantity in the presentence report, the Court would have found Soto's trial testimony – in which he said only that Movant was a mechanic at the warehouse – more credible than the presentence report's finding that Soto told an agent, outside of court, that Movant was a "look out" at the warehouse.  Soto's statement reported in the presentence report did not harm Movant at sentencing because the Court credited Soto's trial testimony and found, contrary to the presentence report, that Movant played only a minor role as a mechanic at the warehouse.  [Doc. 226 at 16.]  Moreover, Movant has offered nothing to support a finding that the Court would have sentenced Movant to 120-129 months' imprisonment, rather than 130 months, even if the Court had found that only twenty-five kilograms of cocaine was attributable to him.  Movant has not shown that his trial counsel was ineffective at sentencing and, thus, is

26

not entitled to relief on ground five of his motion.  *See United States v. McKnight*, 386 Fed. Appx. 384, 387-88 (4th Cir. July 6, 2010) (rejecting ineffective assistance claim where the evidence established that co-conspirators' drug transactions were foreseeable to the defendant and defendant's counsel successfully challenged the defendant's role in the offense at sentencing).

## IV.   Certificate of Appealability ("COA")

Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v . McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and internal quotations omitted).

A COA is not warranted in this case.  The resolution of the grounds for relief in Movant's § 2255 motion is not reasonably debatable among jurists of reason.  Accordingly, Movant has not made a substantial showing of the denial of a

constitutional right and should be denied a COA.

## V.      Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Movant's motion to vacate sentence, [Doc. 252], be **DENIED** and that Movant be **DENIED** a certificate of appealability.

The Clerk is **DIRECTED** to terminate the referral to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED**, this 9th day of August, 2011.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/82)